1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN T. HINTON,<br><br>            Plaintiff,<br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the<br>Social Security Administration,<br><br>            Defendant. | NO. CV 04-7504-MAN<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff filed a Complaint on September 10, 2004, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for supplemental security income benefits ("SSI"). On October 6, 2004, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636. The parties filed a Joint Stipulation on May 24, 2005, in which: Plaintiff seeks an order reversing the Commissioner's decision denying benefits and remanding for further appropriate proceedings; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed his application for SSI on October 19, 2001. (Administrative Record ("A.R.") 58-60.) Plaintiff claims to have been disabled since August 1, 1997, due to diabetes mellitus, hypertension, back pain, left hip pain, loss of hearing in his right ear, blurred vision, hepatitis C, swelling in his hands, headaches, and depression. (A.R. 23, 58.) Plaintiff has past relevant experience as a truck driver, car wash manager, and auto detailer. (A.R. 23.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On February 21, 2001, Plaintiff, who was represented by counsel, appeared personally at a hearing before Administrative Law Judge Plauche Villere ("ALJ"). (A.R. 416-36.) On May 25, 2001, the ALJ denied Plaintiff's request for benefits, and the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (A.R. 5-8, 22-29.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his May 25, 2001 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date. (A.R. 28.) He found that Plaintiff has "severe" impairments, consisting of diabetes mellitus, diabetic neuropathy, and obesity, but that Plaintiff's impairments do not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (*Id.*)

The ALJ further found that Plaintiff's complaints are not credible.

(*Id.*)  The ALJ found that Plaintiff has the residual functional capacity to:  "perform a full range of light work, with occasional stooping and squatting, on a regular and sustained basis despite his impairments. Light work includes the ability to stand, walk and sit for at least six hours in an eight-hour period with regular break opportunities, and to lift 20 pounds occasionally and ten pounds frequently."  (*Id.*)  Based upon this residual functional capacity assessment, the ALJ concluded that Plaintiff could perform his past relevant work as an auto detailer and that, in the alternative, there are a significant number of jobs in the national economy that Plaintiff can perform, considering his age, education, and work experience, based on Rules 202.10 and 202.11 of the Medical Vocational Guidelines.[1]  (*Id.*)  Accordingly, the ALJ found that Plaintiff is not "disabled" within the meaning of the Social Security Act.  (*Id.*)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant

---

[1] Under Rule 202.10, a person who is "closely approaching advanced age," with a "limited" education or "at least literate and able to communicate in English," and unskilled, is not disabled.  Under Rule 202.11, a person who is "closely approaching advanced age," with a "limited or less" education, who is skilled but with skills not transferable, is not disabled.  20 C.F.R. Pt. 220, App. 2.

3

evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges one disputed issue: he contends that the ALJ failed to properly consider his obesity. (Joint Stip. at 4.)

**A.    The ALJ Committed No Error In Evaluating Plaintiff's Obesity**.

Although obesity was removed from the Listing of Impairments in 1999, "obesity may still enter into a multiple impairment analysis, but

4

only by dint of its impact upon the claimant's musculoskeletal, respiratory, or cardiovascular system." Celaya v. Halter, 332 F.3d 1177, 1181 n.1 (9th Cir. 2003)(citing 64 Fed. Reg. 46,122). In addition, Social Security Ruling 02-01p recognizes obesity as a medically-determinable impairment, and directs ALJs to consider the combined effects of obesity with other impairments under the Listing of Impairments when assessing a claimant's residual functional capacity.

In Celaya, the Ninth Circuit held that the ALJ should have considered the effect of the *pro se* claimant's obesity, in combination with her other impairments, on her health and ability to work even though the claimant had not explicitly raised obesity as a disabling factor. 332 F.3d at 1182. The Ninth Circuit reasoned that the ALJ should have considered the claimant's obesity for three reasons: (1) it was raised implicitly in her report of symptoms; (2) it was clear from the record that the claimant's obesity was "a condition that could exacerbate her reported illnesses"; and (3) the claimant's *pro se* status, coupled with the ALJ's personal observation of the claimant and the information in the record, should have alerted him to the need to develop the record on her behalf with respect to her obesity. *Id.* at 1182. The Ninth Circuit declared that the ALJ's affirmative responsibility to develop the record is heightened when a claimant is not represented by counsel, and pointed out that the ALJ was dealing with "an illiterate, unrepresented claimant who likely never knew that she *could* assert obesity as a partial basis for her disability." *Id.* at 1183 (emphasis in original).

More recently, in Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005),

the Ninth Circuit held that, under the circumstances of that case, the ALJ's failure consider the effect of the claimant's obesity in a multiple impairment analysis did not constitute reversible error. Rejecting the claimant's argument that, under Celaya, the ALJ was required to consider the interactive effect of obesity on her other impairments, the ALJ declared that Celaya was distinguishable on its facts. *Id*. at 681-82. The Ninth Circuit pointed out that, unlike the record in Celaya, the record in Burch did not indicate that the claimant's obesity "exacerbated her other impairments (other than possibly her back pain)." *Id.* at 682. Second and "[m]ore significantly," the Ninth Circuit stressed that, unlike the claimant in Celaya, the claimant in Burch was represented by counsel. *Id.* The Court noted that it had mentioned in Celaya that the ALJ has "some burden" to develop the record even when a claimant is represented by counsel, but declared that it had not "specif[ied] the parameters of that burden." *Id.* *Contrast* Stack v. Barnhart, 327 F. Supp. 2d 1175, 1178 (C.D. Cal. 2004)(pre-Burch: interpreting Celaya to hold that "the ALJ's duty to develop the record with respect to obesity" applies equally when the claimant is represented by counsel).

In Burch, the Ninth Circuit found that the ALJ's failure to consider the claimant's obesity in determining whether the claimant's impairments were equivalent to a listed impairment did not constitute reversible error, because the claimant had neither specified the pertinent listed impairment, nor provided evidence showing how her obesity, combined with her other impairments, was equivalent to a listed impairment. 400 F.3d at 683. The Ninth Circuit declared that the ALJ is not required to discuss the combined effects of a claimant's

impairments unless the claimant presents evidence in an effort to establish equivalence. *Id.* Although the record in <u>Burch</u> contained some medical records from the claimant's doctors observing that the claimant was obese and recommending that she participate in a medically-supervised weight loss program, the Ninth Circuit specifically observed that, as the district court found:

> *There was no evidence before the ALJ and none in the record, which states that claimant's obesity limits her functioning.* Neither treatment notes nor any diagnoses addressed claimant's limitations due to obesity. The medical record is silent as to whether and how claimant's obesity might have exacerbated her condition. *Moreover, claimant did not present any testimony or other evidence at her hearing that her obesity impaired her ability to work.*

*Id.* at 683 (emphasis added).

Here, there is no dispute that Plaintiff's medical records show that he suffers from obesity. (*See e.g.*, A.R. 142 -- Watts Health Foundation, Inc. July 30, 1998 medical records noting "morbid obesity"; A.R. 256 -- Dr. Singh's July 25, 2000 notes showing that Plaintiff's diabetes was under "very poor control" and Plaintiff "may need further weight loss for improvement"; A.R. 258 -- Dr. Singh's June 22, 2000 notes showing that Plaintiff's abdomen was "obese" and "soft"; A.R. 260 -- May 11, 2000 progress notes describing Plaintiff as an "obese African American male who is angry and upset"; A.R. 278 -- November 12, 1998 County of Los Angeles progress notes diagnosing Plaintiff with

hypertension, diabetes, high blood pressure, obesity, and fatigue and noting that Plaintiff stated: "I feel heavy"; A.R. 248 -- Dr. Dennis Bleakley's January 25, 2001 progress notes indicating that Plaintiff was "decreasing portion size and increasing exercise"; A.R. 250 -- December 21, 2001 progress notes indicating "obesity" and "review[ing] diet and exercise"; A.R. 257 -- July 20, 2000 progress notes indicating that Plaintiff has been watching his diet and not eating sugar and had lost 11 pounds.)  In addition, in an April 26, 1999 report, Dr. Aziz Karamlou, an internal medicine physician who examined Plaintiff at the request of the Commissioner, noted Plaintiff's weight, 283 pounds, but did not specify any limitations flowing from his weight.  (A.R. 153-56.)

In Plaintiff's September 2, 1999 Exertional Daily Activities Questionnaire, he noted that "my weight causes me [to] lose my breath, so breathing is very difficult with any movement."  (A.R. 95.)  However, at the hearing, Plaintiff did not testify as to any limitations arising from his obesity.  Specifically, when questioned about his limitations, Plaintiff testified that his hepatitis C and diabetes cause him to become tired and cause his hands and feet to swell up.  He also noted that he has high blood pressure, which causes nose bleeds, and fungus on his left foot.[2]  (A.R. 421.)

---

[2] Plaintiff testified (A.R. 421) that:

> I really don't do anything no more since I had diabetes, and now they [found] that I got hepatitis C, and I get tired, you know, and I'm [not] myself.  My hands [are] swelling up, my feet swell up, you know.  I got high blood pressure, my nose bleed[s] sometimes from the right nostril, you know.  Just like, you know, everything seem[s] to [be] going wrong.  Like on my left foot, now they got to have me go see a foot doctor because all the stuff is just rotting on that one.  And, you know, it's just some kind of fungus is going on there.

Plaintiff contends that "the ALJ failed to properly evaluate the impact of [his] obesity in assessing [his] residual functional capacity." (Joint Stip. at 8.) In particular, Plaintiff contends that the ALJ committed reversible error because, "unlike the ALJ in *Burch*, the ALJ in [Plaintiff's] case does not mention the interplay of [Plaintiff's] obesity with the other severe impairments, let alone set forth the mandated and required analysis of how he determined the issue of obesity as required by the Commissioner's ruling as found in *Burch*." (Joint Stip. at 9-10.)

In defining Plaintiff's impairments, the ALJ found that: "[t]he evidence supports a finding that [Plaintiff] has been diagnosed with diabetes mellitus which is generally stable through the use of prescribed medication and diet, diabetic neuropathy, and obesity, impairments which can cause significant vocationally relevant limitations." (A.R. 23.) The ALJ further noted that the medical records showed treatment for Plaintiff's obesity. (A.R. 23.) In addition, the ALJ noted Plaintiff's testimony at the hearing, in which Plaintiff ascribed his inability to work to "fatigue due to hepatitis C, swelling in his hands and feet related to diabetes, back spasms, and constant migraine headaches which are somewhat relieved with Motrin." (A.R. 24.) In finding Plaintiff's residual functional capacity, the ALJ explained that he "carefully considered all of the medical opinions in the record regarding the severity of [Plaintiff's] impairments," and specifically included obesity among the "medically determinable impairments" which he found not to preclude Plaintiff from performing his past relevant work as an auto detailer. (A.R. 24, 28.)

Thus, the ALJ's written decision shows that he did consider the impact of Plaintiff's obesity, as well as his other impairments, in determining his residual functional capacity. *See* Burch, 400 F.3d at 683-84 (ALJ did not err in failing to consider obesity at earlier stages of sequential analysis when he considered it in determining residual functional capacity, and there was no evidence in the record of any functional limitations due to obesity that the ALJ failed to consider); *contrast* Stack, 327 F. Supp. 2d at 1179 (ALJ's passing reference to a recommended weight loss program fell short of acknowledging a diagnosis of obesity and weighing its effect on the claimant's other impairments, as required by Celaya).  Because the ALJ expressly acknowledged and considered Plaintiff's obesity in his decision, Plaintiff's reliance on Scott v. Heckler, 770 F.2d 482 (5th Cir. 1985), in which the Fifth Circuit held that it was error for the ALJ to have discounted the claimant's obesity as remediable, is misplaced.

Furthermore, as in Burch, Plaintiff's physicians did not indicate any limitations arising from his obesity and, other than generally recommending weight loss to help control Plaintiff's diabetes, the medical records contain no indication that Plaintiff's obesity exacerbated his impairments. *See* Burch, 400 F.3d at 683.  To the extent that Plaintiff contends Burch requires that the ALJ discuss "the interplay of [Plaintiff's] obesity with [his] other severe impairments," Plaintiff misapprehends Burch.  As noted above, the Ninth Circuit in that case rejected the claimant's contention that the ALJ "is required to consider the interactive effects that obesity has on her other impairments and the combined effect of those impairments" throughout the sequential disability analysis where there is no showing that the

claimant's obesity caused any functional limitations or exacerbated any other impairments.  <u>Burch</u>, 400 F.3d at 681-82.

In his moving papers, Plaintiff now claims that his obesity causes fatigue, which the ALJ did not adequately consider as consequence of Plaintiff's obesity in assessing his residual functional capacity.  (Joint Stip. at 8-9.)  Fatigue is a factor outlined in Social Security Ruling 02-01p that may affect an individual's physical and mental abilities to sustain work activity in cases involving obesity.  *See* Soc. Sec. R. 02-01p, 200 WL 628049.  Nevertheless, the ALJ considered Plaintiff's claims of fatigue, regardless of whether such fatigue arose from Plaintiff's hepatitis C, as Plaintiff claimed at the hearing, or from his obesity, stating:

> While treating physician records contain positive laboratory testing for hepatitis C, there is no evidence of any treatment for hepatitis, nor any suggestion that it has resulted in any restriction in the claimant's ability to function.  In addition, a careful review of the subjective evidence of the record also does not support persistent debilitating fatigue.  Though fatigue was noted on occasion, treatment notes only rarely referred to the claimant's actual complaints of fatigue, and do not include clinical observations of a tired or weakened appearance.  It is concluded that the claimant's allegations of fatigue are not severe.

(A.R. 25.)  Indeed, consistent with the ALJ's explanation, the record contains little mention of Plaintiff's complaints of fatigue to his

treating physicians. (*See, e.g.*, A.R. 272 -- Dr. Cynthia Jones's April 15, 1999 progress notes indicating that Plaintiff suffered from anhedonia, depressed mood, weight gain, and fatigue; A.R. 278 -- County of Los Angeles November 12, 1998 progress notes indicating "easy fatiguability.")

Finally, as in Burch, Plaintiff did not present to the ALJ any evidence that his obesity limited his functioning, nor did he testify at the hearing regarding any limitations caused by his obesity. *See* Burch, 400 F.3d at 683. Indeed, Plaintiff's current emphasis on obesity may well be an after the fact effort to reverse an unfavorable decision. Plaintiff's case is not like Celaya, in which the claimant was unrepresented, the ALJ had a heightened duty to develop the record, and the medical records clearly indicated that the claimant's obesity "was a condition that could exacerbate her reported illnesses." Celaya, 332 F.3d at 1182. Here, as in Burch, Plaintiff was represented by counsel, the ALJ did not have a "heightened duty" to develop the record, and as discussed above, there was no indication in the medical records that Plantiff's obesity exacerbated his other impairments or impacted his ability to work.

Because the record contains substantial evidence supporting the ALJ's determination of Plaintiff's residual functional capacity, it is not necessary for the case to be remanded for further development of the record. 20 C.F.R. § 404.1512(e); Thomas v. Barnhart, 278 F.3d 947, 956-57, 959 (9th Cir. 2002)(requirement in 20 C.F.R. § 404.1512(e), that the Commissioner re-contact treating sources, is triggered only where the information from the treating sources is inadequate to make a

determination regarding disability). To the extent that Plaintiff requests remand to develop the record on the issue of the impact of Plaintiff's obesity on his residual functional capacity, such request is denied.

Plaintiff's argument that the ALJ committed reversible error by failing to consider the effects of his obesity is unavailing. The ALJ's finding, therefore, will not be disturbed.

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is AFFIRMED, consistent with this Memorandum Opinion and Order. Judgment shall be entered affirming the decision of the Commissioner, consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 30, 2006

/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE